994 So.2d 465 (2008)
Gerardo Martin Demerutis CHAUL; Empresa Feralmad, S.A. De C.V.; Angel Demerutis Elizarraraz; Javier Romero Osorio; Homero Diaz Cordoba; Armando Prida Huerta; and Guadalupe Quinones De Fernandez as successor to Jaime Fernandez Armendariz, Appellants,
v.
Mohammed ABU-GHAZALEH; IAT Group, Inc.; Fresh Del Monte Produce, Inc.; Eduardo R. Bours; and Grupo Empresarial Agricola Mexicano, S.A. De C.V., Appellees.
No. 3D07-217.
District Court of Appeal of Florida, Third District.
November 5, 2008.
*466 Rivero Palmer & Mestre; Moscowitz & Moscowitz; Joel S. Perwin, Miami, for appellants.
Boies Schiller & Flexner and Carlos M. Sires, Fort Lauderdale; Cleary Gottlieb Steen & Hamilton and Boaz S. Morag, for appellees.
Before COPE and RAMIREZ, JJ., and SCHWARTZ, Senior Judge.
RAMIREZ, J.
Gerardo Martin Demerutis Chaul, et al., appeal the entry of an adverse final judgment. The defendants, Mohammed Abu-Ghazaleh, et al., cross-appeal the trial court's order denying their motion to dismiss, their motion for summary judgment, and their motion for judgment on the pleadings. We reverse because the trial court should have granted defendants' motion for summary judgment, as the plaintiffs lacked standing to bring this action. Their claims were derivative in nature and, as shareholders, they cannot pierce their own corporate veil to gain standing. The action should have been brought as a shareholder derivative action.
This case involves a complicated commercial dispute over the sale of Fresh Del Monte Produce N.V. ("FDMP NV") following a bidding process. A jury trial resulted in a verdict in favor of the defendants Mohammed Abu-Ghazaleh, et al. The plaintiffs, Gerardo Martin Demerutis Chaul, et al., were investors who claimed that IAT Group, Inc. purchased the company at millions below its true value as the result of bribery. At the time of the purchase, Abu-Ghazaleh was the chairman and CEO of IAT. The plaintiffs identified themselves as de facto shareholders of Del Monte N.V., who lost their respective percentages of the difference between the true value of the company and the value of the company at the sale. The investors *467 further alleged that they learned of the alleged fraud when defendant Eduardo Bours' former assistant, Edgardo Valencia, revealed that Bours received at least $321,000 from the defendants after the sale closed. The plaintiffs contended that this was in return for awarding the sale to IAT. Bours testified that the payment was a bonus, not a bribe. The jury found in favor of the defendants. The plaintiffs appealed, and the defendants cross-appealed. We need not discuss all the issues raised by the parties because we find the issue of standing dispositive.
On December 20, 1996, a Mexican corporation, Grupo Empresarial Agricola Mexicano, S.A. de C.V. ("GEAM") sold the shares in its wholly-owned subsidiaries, Fresh Del Monte Produce N.V. and Global Reefer Carriers Ltd. ("GRC") to FDMP Inc., the corporation formed by IAT to acquire the Fresh Del Monte Produce business from GEAM. Plaintiffs, four Mexican individuals and one Mexican corporation who directly or indirectly owned 6.3 percent of the shares of GEAM, alleged that GEAM accepted IAT's bid for FDMP NV over purportedly substantially higher viable offers because Mohammed Abu-Ghazaleh, the Chairman of IAT, paid a bribe to defendant Eduardo Bours, then the Chairman of GEAM.
Plaintiffs' claim is that GEAM, a Mexican corporation in which plaintiffs held a small shareholder interest, received inadequate consideration for its shares in FDMP NV. Defendants argue that the plaintiffs lacked standing directly to sue for harm suffered by GEAM in the first instance and by the plaintiffs indirectly. The plaintiffs averred that the harm they suffered was a result of the 1996 transaction between GEAM and IAT in that the sale "depressed the value of their shares in GEAM, and of their de facto shares in [FDMP] N.V." They did not allege to have suffered any direct injury.
Plaintiffs complain that GEAM received inadequate consideration for its assets  the shares in FDMP NV  when GEAM sold those assets to IAT as a result of Bours' breach of his fiduciary duty to GEAM's shareholders, aided and abetted by defendants. Shareholders of GEAM have no standing to bring a direct action for injuries allegedly suffered by GEAM. See Alario v. Miller, 354 So.2d 925, 926 (Fla. 2d DCA 1978) (explaining that a derivative suit is an action in which a stockholder seeks to enforce a right of action existing in the corporation, whereas a direct action is a suit by a stockholder to enforce a right of action existing in the stockholder). Plaintiffs may not sue directly for an injury sustained by GEAM as to which plaintiffs' only claim is that the value of their investment in FDMP NV through GEAM was diminished.
Plaintiffs try to avoid the derivative nature of their claims by invoking the alter ego doctrine to claim that the corporate veil between GEAM and FDMP NV should be disregarded by treating the plaintiffs as "de facto" shareholders of FDMP NV. Shareholders in a corporation may not pierce their own corporate veil to attain standing to sue as the owner of the corporation's assets. Resorts Int'l, Inc. v. Charter Air Ctr., Inc., 503 So.2d 1293, 1296 n. 1 (Fla. 3d DCA 1987) ("The corporate veil may be used as a defense but may not be removed at will by the stockholders for the purposes of seeking affirmative relief.").
Plaintiffs attempt to characterize the December 20, 1996 sale of FDMP NV as a de facto merger. That argument is without merit. "A de facto merger occurs when one corporation is absorbed by another, i.e., there is a continuity of the *468 selling corporation evidenced by such things as the same management, personnel, assets, location and stockholders." 300 Pine Island Assocs., Ltd. v. Steven L. Cohen & Assocs., P.A., 547 So.2d 255, 256 (Fla. 4th DCA 1989). GEAM, with the approval of its shareholders, sold the two subsidiaries to an entirely different entity, IAT Group, Inc. The test for a de facto merger was not met.
For the stated reasons, we conclude that the plaintiffs lacked standing. The cross-appeal is meritorious, and we affirm the judgment on that basis. It is unnecessary to reach the claims raised on direct appeal.
Affirmed.