**Pedro INFANTE, Plaintiff,**

v.

**BANK OF AMERICA CORP., Defendant.**

**Case No. 09–21586–CIV**

United States District Court, S.D. Florida.

Dec. 18, 2009.

settlement documents might reveal whether NREIS was truly Plaintiff's agent, rather than Countrywide's agent.

John Hasan Ruiz, Joseph Lawrence McGuinness, Karen Jill Barnet-Backer, Jessica B. Reyes, John H. Ruiz PA, Miami, FL, for Plaintiff.

Eric Shaun Matthew, Jeffrey Alan Trinz, Akerman Senterfitt, Miami, FL, William Patrick Heller, Akerman Senterfitt & Eidson, Fort Lauderdale, FL, for Defendant.

### ORDER GRANTING MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT [DE 32]; CLOSING CASE

ALAN S. GOLD, District Judge.

## I. Introduction

THIS CAUSE is before the Court upon Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint [DE 32] ("Motion"), filed November 16, 2009.[1] In his Second Amended Complaint [DE 28], Plaintiff asserts two causes of action: Count I—Fraud, and Count II—Rescission Pursuant to 15 U.S.C. § 1635. Defendant now moves to dismiss both counts with prejudice on the basis that Plaintiff has failed to state a claim upon which relief can be granted and has also failed to meet the applicable pleading standards. I have jurisdiction pursuant to 28 U.S.C.

---

1. Plaintiff filed its initial Complaint on June 11, 2009 [DE 1] and later filed its First Amended Complaint [DE 8] on July 21, 2009. On August 4, 2009, Defendant moved to dismiss the First Amended Complaint. On October 5, 2009, Plaintiff moved for leave to amend, which was granted on October 9, 2009. See [DE 26]. On October 15, 2009, Plaintiff filed its Second Amended Complaint [DE 28], which Defendant now moves to dismiss.

§ § 1331, 1332, and 1367(a). Having considered the motion, Plaintiff's response, Defendant's reply, the record, the relevant case law, the oral arguments of the parties, and being otherwise fully advised, I grant Defendant's Motion as to both counts for the reasons that follow.

## II. Background[2]

Plaintiff Pedro Infante ("Plaintiff" or "Infante") is an individual and the current owner of a parcel of property located in Coconut Grove, Florida ("the property"). [DE 28, ¶ 5]. In October of 2007, Plaintiff closed on two mortgage loans whereby Countrywide Bank, FSB ("Countrywide"), a corporate entity that has since been purchased by Defendant Bank of America ("Defendant" or "Bank of America"), agreed to "finance [Plaintiff's] construction of a residence and related improvement on the property" and to refinance the property[3]; the first mortgage loan was for $1,462,500 ("first mortgage loan") and the second mortgage loan was for $195,000 ("second mortgage loan"). [DE 32–1, p. 4]; [DE 28, ¶ ¶ 17, 18]. In order to obtain these loans, Plaintiff submitted a loan application. [DE 28, ¶ ¶ 17, DE 32–2]. This application—commonly referred to as a Uniform Residential Loan Application

("URLA")—required Plaintiff to provide a variety of detailed information regarding his financial standing, such as net assets, income, and expenses. *See* [DE 32–2].

Plaintiff's Uniform Residential Mortgage Application, which Plaintiff swore contained true and correct information,[4] reflected a monthly income of $35,416.00. [DE 28, ¶ 25]. However, Plaintiff claims that his income at the time was only $15,522.28 and that Defendant "inflated the true income figures to justify the loan and prepare the loan for future assignment or sale" and to induce Plaintiff to "incur a loan obligation that the Defendant was fully aware that Plaintiff would ultimately be unable to pay." [DE 28, ¶ 28]. Plaintiff also asserts that Defendant neglected to make certain disclosures required by the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq,* and that Plaintiff is thus entitled to rescind the transactions at issue pursuant to the statute. [DE 28, ¶ ¶ 6–16, 30–33, 39–56].

## III. Standard of Review

For the purposes of a motion to dismiss, my review is "limited to the four corners of the complaint" and any documents referred to in the complaint which are cen-

2. For purposes of a motion to dismiss, I take as true all factual allegations in Plaintiff's Second Amended Complaint *Thaeter v. Palm Beach County Sheriff's Office,* 449 F.3d 1342, 1352 (11th Cir.2006).

3. Plaintiff's Second Amended Complaint alleges that the transactions at issue "were refinances because they were used to pay off a previous loan and therefore constitute[ ] a refinance of the original loan." [DE 28, ¶ 18]. However, the signed loan documents central to Plaintiff's claims indicate that the first mortgage loan was made "to finance Borrower's construction of a residence and related improvement on the property." [DE 32–1, p. 4, ¶ 1]. It appears that these allegations can be reconciled, as the loan proceeds could have been used for both construction and

refinancing purposes. However, to the extent there is a conflict between the allegations in the Second Amended Complaint and the exhibits, the exhibits control. *Crenshaw v. Lister,* 556 F.3d 1283, 1292 (11th Cir.2009) (quotations omitted); *see also Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1206 (11th Cir.2007) (when the actual provisions of the Lease are considered and applied they control over a plaintiff's contradictory allegations).

4. Plaintiff does not dispute the authenticity of his signature on the verified loan application. He does allege, however, that the loan application was filled out by Countrywide and sent to him for verification after they assured him that the information therein was true and correct. *See* [DE 28, ¶ 29].

tral to Plaintiff's claims. *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir.2002). Thus, for the purposes of deciding Defendant's motion, only the contents of Plaintiff's Second Amended Complaint and certain central documents will be considered. *Brooks v. Blue Cross & Blue Shield of Florida*, 116 F.3d 1364, 1369 (11th Cir.1997) (noting that if a "plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment.")

■ In determining whether to grant a motion to dismiss, I must accept all the factual allegations in the complaint as true and evaluate all inferences derived from those facts in the light most favorable to the Plaintiff. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir.2003); *Hoffend v. Villa*, 261 F.3d 1148, 1150 (11th Cir.2001). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1959, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)). "Of course, 'a formulaic recitation of the elements of a cause of action will not do.'" *Watts v. Florida Intern. University*, 495 F.3d 1289, 1295 (11th Cir.2007) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). "While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because it strikes a savvy judge that actual proof of those facts is improbable, the factual allegations must be enough to raise a right to relief above the speculative level." *Watts*, 495 F.3d at 1295 (citing

*Twombly*, 550 U.S. at 555, 127 S.Ct. 1955) (internal quotations omitted). In other words, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, — U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

■ The pleading requirements are different for certain matters, including matters where fraud is alleged, such as Plaintiff's second cause of action for aiding and abetting a fraud. Federal Rules of Civil Procedure 9(b) provides that in "alleging fraud . . . a party must state with particularity the circumstances constituting fraud." The Eleventh Circuit has held that in order to comply with the mandate of Rule 9(b), a Plaintiff must set forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir.2001) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir.1997)). Simply put,

Plaintiffs alleging fraud must plead "the who, what, when, and where [of the fraud] *before* access to the discovery process is granted." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir.1997) (emphasis in original). This rule requiring particularity serves an important purpose in fraud actions by "alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir.2006) (quoting *Durham v. Bus. Mgmt. Assoc.*, 847 F.2d 1505, 1511 (11th Cir. 1988)) (internal quotes omitted). The remedy for a failure to plead with sufficient particularity is dismissal with or without prejudice, depending on the circumstances. *Id.* at 1362 (affirming district court's dismissal of claim with prejudice for failing to plead fraud with sufficient particularity).

## IV. Analysis

### A. *Count I—Fraud*

■■■ Plaintiff's first cause of action asserts that Defendant perpetrated a fraud upon the Plaintiff. The crux of this claim is that "Defendant made misrepresentations in the [URLA] when it specifically knew that the representations as [they]

pertain to the Plaintiff's income [were] false."[5] **[DE 28, ¶ 33]**. In order to state a cause of action for fraudulent misrepresentation under Florida law,[6] Plaintiff must adequately allege the following elements: (1) a false statement by Defendant concerning a material fact; (2) the Defendant's knowledge that the representation was false; (3) that the representation was made by Defendant with the intent to induce another to act on it; and (4) that Plaintiff suffered a consequent injury in reliance on the representation. *Johnson v. Davis*, 480 So.2d 625, 627 (Fla.1985). A plaintiff's "[f]ailure to allege a specific element of fraud in a complaint is fatal when challenged by a motion to dismiss." *Strack v. Fred Rawn Constr., Inc.*, 908 So.2d 563 (Fla. 4th DCA 2005) (affirming dismissal of fraud count with prejudice where plaintiff failed to allege all elements despite having been given multiple opportunities to do so).

■■ Here, Plaintiff's fraud claim fails for a number of reasons. First, Plaintiff fails to adequately allege a false statement by Defendant concerning a material fact. As Defendant correctly points out, "a loan application is a request by the borrower for a loan; it does not contain any repre-

5. Despite having been ostensibly drafted by counsel, Plaintiff's Second Amended Complaint is rife with typographical errors and irreconcilable inconsistencies. This appears to support Defendant's theory that Plaintiff's Second Amended Complaint was a slightly modified version of an "internet derived complaint." **[DE 32, pp. 3–4]**. Regardless, the source of the complaint does not impact my legal analysis; rather, it is the complaint's allegations that control.

6. In the absence of an enforceable choice of law provision, federal courts must follow the conflicts of law rules of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The forum state here is Florida, which applies the "most significant

relationship" test to tort claims. *Green Leaf Nursery v. E.I. DuPont De Nemours and Co.*, 341 F.3d 1292, 1301 (11th Cir.2003). Although neither party has raised the issue, the complaint and the documents central to Plaintiff's fraud claim clearly indicate that Florida has the most significant relationship to this claim. In applying Florida law, I "determine issues of state law as [I] believe the Florida Supreme Court would." *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1326 n. 5 (11th Cir.2005). "In the absence of definitive guidance from the Florida Supreme Court, [I] follow relevant decisions from Florida's intermediate appellate courts." *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1231 (11th Cir.2004) (citation omitted).

sentations by the lender." [**DE 32, p. 8**]. To the contrary, the statements contained in a URLA are the applicant's "own statement[s] regarding his income" and are certified by the applicant when he signs "the loan application, to be 'true and correct,' " regardless of who assists the applicant in preparing the application. *Mustafa v. Countrywide Home Loans, Inc.*, 2009 WL 3464860, *3 (E.D.Mich. Oct. 23, 2009); *see also* [**DE 32–2**] (stating on face of application that it "is designed to be completed *by the applicant(s)* with the Lender's assistance.") (emphasis added). Because a misrepresentation by a Plaintiff cannot satisfy the first element of a fraud claim pursuant Florida law, Plaintiff's claim fails as a matter of law. *First Interstate Development Corp. v. Ablanedo*, 511 So.2d 536, 539 (Fla. 1987) (noting that "to prove fraud, a plaintiff must establish that *the defendant* made a deliberate and knowing misrepresentation.") (citing *Lance v. Wade*, 457 So.2d 1008, 1011 (Fla.1984)) (emphasis added).

Nor does Plaintiff's Second Amended Complaint satisfy the third element of fraudulent misrepresentation, which requires a Plaintiff to adequately plead that the Defendant intended to induce another to act on its alleged misrepresentation. *Johnson*, 480 So.2d at 627. As one might expect given the recent residential mortgage crisis, this is not the first lawsuit to test the theory that a lender committed fraud by inflating an applicant's income on a loan application. *See e.g., Quintana v. Countrywide Home Loans, Inc.*, Case No. 09–20427–CMA, [**DE 26**] (dismissing fraud claim with prejudice for failure to adequately plead reliance); *Matthys v. Mortgage Electronic Registration Systems, Inc.*, 2009 WL 3762632, *2 (M.D.Fla. Nov. 10, 2009) (case discussed in detail below).

Having reviewed the various decisions regarding similar claims, I find the decision in *Matthys v. Mortgage Electronic Registration Systems, Inc.* to be particularly persuasive. In *Matthys*, the Plaintiffs, like Mr. Infante, alleged "that agents of [the Defendant] defrauded them by falsifying their income on the loan application, in the absence of which they would not have been approved for the $399,000 loan." 2009 WL 3762632 at *2. In dismissing the Plaintiffs' fraud claim, the court noted that "[t]he only false statement at issue [ ] is the statement on the loan application regarding the Plaintiffs' income, [and that] any alleged falsification of the Plaintiffs' income on that document would have been intended to induce action on the part of *the lender*, rather the Plaintiffs." *Id.* (emphasis in original). I agree with the *Matthys* court's analysis, and conclude that Plaintiff has failed to adequately plead an intent on the part of Defendant to induce Plaintiff to act on the misrepresentations contained in the URLA.

Plaintiff's Second Amended Complaint also fails to adequately plead the detrimental reliance element of his common law fraud claim. Although Plaintiff formulaically and conclusorily asserts that he "justifiably relied on [Defendant's] false and misleading statements and/or omissions ... to sign the Mortgage and Note," [**DE 28, ¶ 37**], the more specific facts contained in the Second Amended Complaint clearly establish that Plaintiff could not have signed the loan documents in reliance on Defendant's misrepresentations with regard to his income. *See Lindsay v. Brogden*, 2008 WL 4542755, *5 n. 4 (explaining that specific allegations in a complaint control over conflicting general allegations). Critically, Plaintiff alleges that "false representations [regarding his income] were concealed" and that he "sign[ed] the [loan] documents with neither knowledge or reasonable opportunity to learn of the misrepresentations." [**DE 28, ¶ 35**]. As the *Matthys* court noted, logic dictates that where one is not aware of a misrepresentation, he cannot possibly rely on it. *Matthys*, 2009 WL 3762632 at

*2 (dismissing fraud claim because "Plaintiffs contend[ed] that they were unaware of that falsehood [and thus] could not have relied on it."). Accordingly, Plaintiff's fraud claim fails as a matter of law.

■ Alternatively, Plaintiff's fraud claim fails because the Second Amended Complaint is wholly devoid of allegations that, if proven, would render Defendant Bank of America liable for torts committed by Countrywide prior to its acquisition by Bank of America.[7] Florida follows the traditional corporate law rule that where a corporation acquires 100% of another corporation's stock or assets, it "does not as a matter of law assume the liabilities of the prior business." *Corporate Express Office Products, Inc. v. Phillips*, 847 So.2d 406, 412 (Fla.2003). Of course, there are exceptions to the general rule, such as where: "(1) the successor expressly or impliedly assumes obligations of the predecessor; (2) the transaction is a de facto merger[8]; (3) the successor is a mere continuation of the predecessor; or (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor." *Id.* (quoting *Bernard v. Kee Mfg. Co.*, 409 So.2d 1047, 1049 (Fla.1982)). On the other hand, where there is a "corporate merger," and one entity ceases to exist, the general rule is that "the surviving corporation becomes 'liable for the debts, contracts and torts' of the former corporation." *Corporate Express Office Products*, 847 So.2d at 413

(citing *Barnes v. Liebig*, 146 Fla. 219, 1 So.2d 247, 253 (1941) and Fla. Stat. § 607.1106 (2002)).

■ Here, Plaintiff has not alleged any facts giving rise to the reasonable inference that Bank of America is liable for the pre-acquisition torts committed by Countrywide.[9] In fact, the only allegations in the Second Amended Complaint concerning the Bank of America–Countrywide transaction are that "Countrywide ... is now owned by the Defendant" and that "Countrywide Bank, FSB was purchased by the Defendant." **[DE 28, ¶¶ 17, 19].** These meager allegations, standing alone, are inadequate under federal pleading standards to give rise to an inference of a merger, a de facto merger, or any other corporate law principle that might impose liability on Defendant for the fraud allegedly perpetrated by Countrywide. *See Nova Molecular Technologies, Inc. v. Penn Specialty Chemicals, Inc.*, 2009 WL 564433 (W.D.Tenn. Mar. 5, 2009) (dismissing claim against successor corporation because "Amended Complaint lack[ed] any allegation that supports even an inference of a de facto merger. Plaintiff simply allege[d] that PennAkem purchased the assets of Penn.").

B. *Count II—Rescission Pursuant to TILA*

■ Plaintiff's TILA[10] claim requires a much less extensive analysis. In detailing

---

**7.** The transactions at issue were allegedly consummated on October 12, 2007. [DE 28, ¶ 18]. According to Plaintiff, it was "subsequent[ ]" to these transactions that "Countrywide Bank, FSB was purchased by the Defendant." *Id.* at ¶ 19. Plaintiff does not assert that Bank of America directly participated in the alleged fraud.

**8.** "A de facto merger occurs when one corporation is absorbed by another, i.e., there is a continuity of the selling corporation evidenced by such things as the same management, personnel, assets, location and stock-

holders." *Chaul v. Abu–Ghazaleh*, 994 So.2d 465 (Fla. 3d DCA 2008) (citation omitted).

**9.** I recognize that the transaction may have been a merger or that the nature of the transaction may otherwise implicate an exception to the general corporate law rules governing asset and stock purchases. However, it is the allegations of the operative complaint, and not extrinsic transactional realities, that control my analysis.

**10.** Although Count II is entitled "Claim for Declaratory Relief Rescission Pursuant to 15

the factual background underlying his claims, Plaintiff identifies two mortgage loans: a first mortgage, and a second mortgage. **[DE 28, ¶ 18, 26]**. Yet, despite having been afforded two opportunities to amend his TILA claim, Plaintiff has once again failed to identify which mortgage loan(s) he seeks to rescind. Instead, Plaintiff's TILA claim speaks of a single "mortgage," "the loan," the "subject mortgage loan," and requests in the WHEREFORE clause that "the mortgage that is the subject of this lawsuit [be] hereinafter terminated." *Compare* **[DE 1, ¶ 50]** *with* **[DE 28, ¶¶ 39, 40, 42, "Wherefore" clause]**. Because Plaintiff has failed to adequately "identify his 'demand for the relief sought,' ... Plaintiff has failed to state a claim." *Rivero v. Goodman Distribution Inc.*, 2008 WL 746837, *2 (M.D.Fla. Mar. 18, 2008) (dismissing claim for failure to adequately identify the relief sought); *see also Enwonwu v. Fulton–Dekalb Hosp. Authority*, 286 Fed.Appx. 586, 597 (11th Cir.2008) (noting that "a pleading that states a claim for relief must contain ... a demand for the relief sought.") (quoting Fed.R.Civ.Pr. 8(a)).

Alternatively, Plaintiff's claim for rescission of the first mortgage loan fails because some of the loan proceeds were used to finance the cost of constructing Plaintiff's residence. As both parties correctly acknowledge, the TILA-based right to rescission does not apply to "residential mortgage transactions." 15 U.S.C. § 1635(e)(1); *see also* 12 C.F.R. § 226.23(f)(1). A "residential mortgage transaction" is defined in the statute as:

a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling.

15 U.S.C. § 1602(w).

While the statute does not expressly address the applicability of TILA to multi-purpose loans—for example, loans that are used to both construct a dwelling *and* refinance the property upon which the dwelling is built—the pertinent Federal Reserve Board's Official Staff Interpretations [11] note that

[a] transaction meets the definition of this section if *any part of the loan proceeds* will be used to finance the acquisition or initial construction of the consumer's principal dwelling. For example, a transaction to finance the initial construction of the consumer's principal dwelling is a residential mortgage transaction even if a portion of the funds will be disbursed directly to the consumer or used to satisfy a loan for the purchase of the land on which the dwelling will be built.

12 C.F.R. pt. 226, Supp I, Subpart A, § 226.2(a)(24)–6 (emphasis added).

Although Plaintiff conclusorily alleges that the purpose of the mortgage loans "was a refinance and not a residential mortgage for acquisition or initial construction of a dwelling," **[DE 28, ¶ 39]**, the more specific contents of the controlling [12]

---

U.S.C. § 1635," *see* **[DE 28, p. 7]**, the count also makes reference to actual damages allegedly suffered by the Plaintiff as a result of the alleged TILA violations. *Id.* However, because the TILA claim requests only a declaration, and not monetary damages, *see id.* at 11, I construe the claim as one for rescission pursuant to TILA.

**11.** The official staff interpretations are binding "unless demonstrably irrational." *Johnson v. Fleet Finance, Inc.*, 4 F.3d 946, 949 (11th Cir.1993) (citing *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565, 100 S.Ct. 790, 796, 63 L.Ed.2d 22 (1980)).

**12.** *See* note 1, *supra*.

signed loan documents unequivocally establish the fact that the first mortgage loan proceeds were disbursed—at least in part—to finance the construction of Plaintiff's principal dwelling. **[DE 32–1, p. 4]** (noting that "Borrower, lender, and a contractor are entering into a Construction Loan Agreement . . . under which Lender has agreed to extend to Borrower a loan . . . to finance Borrower's construction of a residence and related improvements on the Property."); **[DE 32–2, p. 3]** (stating under penalty of perjury that: (1) Plaintiff intended to use mortgage loan proceeds for refinancing *and* construction purposes, and (2) Plaintiff "intend[ed] to occupy the property as his primary residence"). Accordingly, the first mortgage loan constitutes a "residential mortgage transaction" and is exempt from TILA's rescission provisions.

## V. Conclusion

Based on the foregoing, I conclude that both counts of Plaintiff's Second Amended Complaint fail to state a claim and that dismissal is warranted pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Plaintiff has failed to adequately plead its fraud and TILA rescission claims after being afforded two prior opportunities to amend, *see* **[DE 1]**; **[DE 8]**; **[DE 28]** (asserting claims for common law fraud and TILA-based rescission), I dismiss these claims with prejudice. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (stating that "[g]enerally, where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice. A district court need not, however, allow an amendment . . . where there has been . . . repeated failure to cure deficiencies by amendments previously allowed.") (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9

L.Ed.2d 222 (1962)). Accordingly, it is hereby

**ORDERED AND ADJUDGED** that:

1. Defendant's Motion to Dismiss **[DE 32]** is hereby GRANTED.

2. Counts I and II of Plaintiff's Second Amended Complaint are hereby DISMISSED WITH PREJUDICE.

3. This case is CLOSED.

4. All pending motions are DENIED AS MOOT and all upcoming hearings are CANCELLED.

DONE and ORDERED IN CHAMBERS at Miami, Florida.

## ORDER DENYING MOTION FOR RECONSIDERATION [DE 40]

THIS CAUSE is before the Court upon Plaintiff's Motion for Reconsideration **[DE 40]** filed December 18, 2009, seeking reconsideration of my Orders dismissing Plaintiff's claims with prejudice and entering final judgment in favor of Defendant. *See* **[DE 38]**; **[DE 39]**. Defendant opposes Plaintiff's motion. *See* **[DE 41]**.

When, as here, a motion for reconsideration is served within ten days of the rendition of the judgment, Federal Rule of Civil Procedure 59(e) applies. *See Holt v. U.S.*, 249 Fed.Appx. 753, 757 (11th Cir.2007); *Williams v. Cruise Ships Catering & Serv. Int'l, N.V.*, 320 F.Supp.2d 1347, 1357 (S.D.Fla.2004). Although Rule 59(e) does not set forth any specific criteria, courts have delineated three major grounds justifying reconsideration under the Rule: "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Id.* at 1357–58; *see also* 18 Wright, Miller & Cooper, Federal Practice and Procedure: jurisdiction § 4478 (1981). Relief under Rule 59(e) is an extraordinary remedy to be employed sparingly. *Auto–Owners Ins. Co. v. Se.*

*Floating Docks, Inc.,* 2008 WL 2074397, 2008 U.S. Dist. LEXIS 39630 (M.D.Fla. May 15, 2008) (citing *U.S. v. Bailey,* 288 F.Supp.2d 1261, 1267 (M.D.Fla.2003)). Moreover, Rule 59(e) may not be used "to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Village of Wellington, Fla.,* 408 F.3d 757, 763 (11th Cir.2005).

Plaintiff's motion indicates that it seeks relief under "the need to correct clear error or prevent manifest injustice" category. Simply put, Plaintiff argues that it has a valid claim and disputes this Court's dismissal with prejudice, asserting that the dismissal should have been without prejudice to Plaintiff's right to amend and file a fourth complaint in this matter. Because Plaintiff has failed to state a claim after having filed three complaints, I conclude that dismissal with prejudice was appropriate and find no clear error or manifest injustice warranting the extraordinary remedy of Rule 59(e) relief. *See Bryant v. Dupree,* 252 F.3d 1161, 1163 (11th Cir. 2001) (noting that district courts need not allow amendment of a complaint where there has been a repeated failure to cure deficiencies after previous amendments). Accordingly, it is hereby

ORDERED AND ADJUDGED that:

1.  Plaintiff's motion [DE 40] is DE-NIED.

2.  This case shall remain CLOSED.

DONE AND ORDERED in Chambers, at Miami, Florida, this 14 of January, 2010.